

## CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

CIVIL DIVISION
111 N. Calvert Street
Baltimore, Maryland 21202
Main: 410-333-3733
Civil: 410-333-3722
Criminal: 410-333-3750
Family: 410-333-3709/3738
Juvenile: 443-263-6300

**To:** NOTRE DAME OF MARYLAND UNIVERSITY
4701 N CHARLES STREET
BALTIMORE, MD 21210

Case Number: C-24-CV-25-010356
Other Reference Number(s):
Child Support Enforcement Number:

**JASMINE CARR VS. NOTRE DAME OF MARYLAND UNIVERSITY**

Issue Date: 12/30/2025

## WRIT OF SUMMONS

You are summoned to file a written response by pleading or motion, within 60 days after service of this summons upon you, in this court, to the attached complaint filed by:

JASMINE CARR
8164 Glen Gary Road
TOWSON, MD 21286

This summons is effective for service only if served within 60 days after the date it is issued.

Xavier A. Conaway
Clerk of the Circuit Court

To the person summoned:
Failure to file a response within the time allowed may result in a judgment by default or the granting of the relief sought against you.
Personal attendance in court on the day named is NOT required.
It is your responsibility to ensure that the court has your current and correct mailing address in order to receive subsequent filings and notice in this case.

Instructions for Service:
1. This summons is effective for service only if served within 60 days after the date issued. If it is not served within the 60 days, the plaintiff must send a written request to have it renewed.
2. Proof of Service shall set out the name of the person served, date and the particular place and manner of service. If service is not made, please state the reasons.

CC-CV-032 (Rev. 03/2024)       Page 1 of 3       12/30/2025 12:56 PM

Case 1:26-cv-00820-ELH    Document 1-1    Filed 02/27/26    Page 2 of 10

Circuit Court for Baltimore City
Case Number: C-24-CV-25-010356

Jasmine Carr vs. Notre Dame Of Maryland University

3. Return of served or unserved process shall be made promptly and in accordance with Maryland Rule 2-126.
4. If this notice is served by private process, process server shall file a separate affidavit as required by Maryland Rule 2-126(a).

**JASMINE CARR**
Plaintiff, Pro Se
8164 Glen Gary Road
Towson, MD 21286
443-673-8394
jasminecarr2024@gmail.com

v.

**NOTRE DAME OF MARYLAND UNIVERSITY**

Defendant
4701 N Charles Street

Baltimore, MD 21210

C-24-CV-25-010356

# COMPLAINT

Plaintiff Jasmine Carr ("Plaintiff"), appearing **pro se**, files this Complaint against Defendant Notre Dame of Maryland University ("NDMU" or "Defendant") and alleges as follows:

# I. PARTIES

1. Plaintiff Jasmine Carr is an adult resident of the State of Maryland.
2. Defendant Notre Dame of Maryland University is a private university located in Baltimore City, Maryland, and at all relevant times was Plaintiff's employer.

# II. JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to Md. Code, Courts & Judicial Proceedings § 1-501.
4. This Court has concurrent jurisdiction over Plaintiff's federal claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.
5. Venue is proper in this Court because the acts complained of occurred in Baltimore City, Maryland, and Defendant conducts business in this jurisdiction.
6. Plaintiff exhausted all administrative prerequisites by filing a charge with the Equal Employment Opportunity Commission and receiving a Notice of Right to Sue.

## III. EMPLOYMENT BACKGROUND

7. Plaintiff was employed by Defendant as Executive Assistant to the Provost and Academic Affairs.
8. Plaintiff's position required executive-level administrative support, cross-departmental coordination, institutional project management, and interaction with external partners.
9. Plaintiff consistently performed her duties professionally and was entrusted with increasing responsibility.

## IV. DISABILITY STATUS AND ACCOMMODATION REQUESTS

10. Plaintiff is a qualified individual with a disability within the meaning of the ADA.
11. Plaintiff disclosed to Defendant that she suffers from tinnitus and anxiety, conditions that substantially limit major life activities.
12. Plaintiff requested reasonable accommodations, including written instructions, professional communication boundaries, and clear documentation practices.
13. Defendant failed to engage in the interactive process and failed to provide reasonable accommodations.
14. Plaintiff's supervisor continued conduct that exacerbated Plaintiff's disability, including standing over Plaintiff's desk and providing instructions on torn scraps of paper.

## V. HEALTH DETERIORATION AND EMPLOYER NOTICE

15. On or about July 3, 2025, Plaintiff experienced severe anxiety requiring hospitalization.
16. Plaintiff's supervisor notified Human Resources of Plaintiff's hospitalization and, in the same communication, declined to approve Plaintiff's timesheet and discussed altering Plaintiff's PTO usage.
17. Defendant treated Plaintiff's medical emergency as a timekeeping issue rather than initiating supportive accommodation efforts.
18. Plaintiff later sought care through Defendant's Employee Assistance Program due to work-related anxiety.

## VI. EXPANDED DUTIES AND UNCOMPENSATED LABOR

19. Following the termination of another administrative assistant, Melodie Barton, Plaintiff was repeatedly assigned duties previously performed by Ms. Barton.
20. Plaintiff received numerous emails from multiple staff members requesting that Plaintiff complete tasks formerly handled by Ms. Barton
21. Plaintiff repeatedly requested clarity regarding the scope, duration, and compensation for these additional duties.
22. Defendant failed to provide clarity or adjust Plaintiff's compensation.
23. Plaintiff also performed additional work beyond her job description, including logistical support for meetings, picking up food for institutional events, and incurring unreimbursed mileage and gas expenses for meetings i.e. BOTAAC
24. Characterization of Authorized Participation in First-Year Melt Event
25. Defendant cited Plaintiff's participation in the First-Year Melt student event as a reason for Plaintiff's termination.
26. Plaintiff's participation in the First-Year Melt event was requested and authorized by leadership.
27. Plaintiff participated in the event in good faith reliance on leadership direction and in furtherance of Defendant's student engagement and retention efforts.
28. Following the event, Plaintiff received written acknowledgment and thanks for her participation.
29. Defendant later retroactively characterized Plaintiff's authorized and praised participation in the First-Year Melt event as improper conduct or a performance deficiency.
30. Defendant's inconsistent treatment of the same conduct—first as approved and appreciated, and later as grounds for termination—demonstrates pretext and supports Plaintiff's claims of retaliation and discrimination.

## VII. SYSTEMS AND PROCESS FAILURES MISATTRIBUTED TO PLAINTIFF

24. Defendant implemented new systems and designated Plaintiff as the central point of contact, directing other administrators to route system-related emails to Plaintiff.
25. Plaintiff appropriately forwarded technical questions to Information Technology.
26. Plaintiff received thank-you acknowledgments from IT and administrative staff for properly handling system inquiries.
27. Defendant later mischaracterized the resulting volume of communications as Plaintiff's performance deficiencies although previous communications and documentation stated otherwise.

## VIII. PRAISE AND POSITIVE PERFORMANCE RECORD

28. Plaintiff received consistent praise throughout her employment, including:

a. **April 30, 2025** – President Chris Sax thanked Plaintiff for providing clear directions and appreciated her support.
b. **May 7, 2025** – Plaintiff's supervisor praised Plaintiff for doing a "great job" managing a "way-too-manual process."
c. **May 13, 2025** – A RisePoint Associate Operations Manager stated Plaintiff was "tremendously helpful" and expressed gratitude.
d. **March 6, 2025** – An Associate Vice President of Student Life thanked Plaintiff and eight other staff for exceptional collaboration and impactful Black History Month programming.
e. A signed acknowledgment from nine staff members thanking Plaintiff for her efforts.
f. Another supervisor offered to serve as a professional reference for Plaintiff.

29. Plaintiff was never placed on a Performance Improvement Plan and received no progressive discipline.

## IX. PROTECTED ACTIVITY AND TERMINATION

30. On **August 1, 2025**, Plaintiff submitted a detailed written communication to Human Resources documenting accommodation failures, role misalignment, uncompensated labor, health impacts, and fear of retaliation.
31. Plaintiff formally requested written guidance on how to file a grievance.
32. Plaintiff sent this communication at approximately **2:32 PM**.
33. Plaintiff was terminated later that same day.

## X. POST-TERMINATION CONDUCT

34. Following Plaintiff's termination, Defendant's counsel sent correspondence accusing Plaintiff of misconduct and warning of potential personal liability.
35. This communication was intended to intimidate Plaintiff and deter the exercise of her legal rights.

## XI. DISPARATE TREATMENT AND PATTERN EVIDENCE

36. Plaintiff is a Black woman.
37. Plantiff along with other staff members praised in the March 6, 2025 Black History Month email were terminated or left the institution shortly thereafter.
38. The Associate Vice President who authored that email also left the institution shortly after

### XII-A. Pattern of Retaliation, Leadership Attrition, and Institutional Instability Following Protected Activity

1. Prior to Plaintiff's termination, another staff member, Melodie Barton, an Administrative Assistant in the School of Arts, Sciences and Business, raised documented concerns to senior leadership and Human Resources regarding workplace fear, communication practices, accessibility, compensation inequities, and retaliation.

2. Ms. Barton's communications referenced anxiety experienced by staff, fear of retaliation, and the absence of safe and effective channels for raising concerns.

3. Shortly after engaging in this protected activity, Ms. Barton was terminated.

4. Very shortly thereafter, the Dean supervising Ms. Barton departed the institution, evidencing leadership instability following the raising of protected concerns.

5. Following Ms. Barton's termination, Defendant redistributed Ms. Barton's job duties to Plaintiff without a change in title, compensation, or support.

6. Plaintiff continued engaged in similar protected activity by raising concerns regarding disability accommodations, anxiety, role misalignment, uncompensated labor, and fear of retaliation.

7. Plaintiff was terminated later the same day she requested grievance procedures and EAP while reiterated accommodation concerns.

8. In addition to these terminations and departures, at least three members of Defendant's Finance team and two members of Defendant's Human Resources department—including the Human Resources Director—departed the institution within approximately nine months.

9. The concentration of employee terminations and leadership departures following protected activity demonstrates a pattern of retaliation, institutional instability, and failure of internal compliance mechanisms.

Case 1:26-cv-00820-ELH   Document 1-1   Filed 02/27/26   Page 8 of 10


## XII. COUNTS

### COUNT I – Failure to Accommodate (ADA)

40. Defendant failed to provide reasonable accommodations and failed to engage in the interactive process.

### COUNT II – Disability Discrimination (ADA)

41. Defendant subjected Plaintiff to adverse employment actions because of her disability.

### COUNT III – Retaliation (ADA and Title VII)

42. Defendant terminated Plaintiff because she engaged in protected activity.

### COUNT IV – Pretextual Termination (Title VII)

43. Defendant's stated reasons for termination are inconsistent with Plaintiff's documented performance record and constitute pretext.

## XIII. DAMAGES

44. Plaintiff suffered lost wages, lost benefits, emotional distress, medical expenses, and reputational harm.

## XIV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Enter judgment in favor of Plaintiff;
B. Award compensatory damages;
C. Award back pay and lost benefits;
D. Award punitive damages where permitted by law;
E. Award costs and such other relief as the Court deems just and proper.

## XV. JURY DEMAND

Plaintiff demands a **trial by jury** on all issues so triable.

---

Respectfully submitted,

*Jasmine Carr*
Plaintiff, Pro Se

Date: __12/6/2025__

C-24CV25-010356

# CIVIL CASE INFORMATION REPORT (CC-DCM-001)

**Court:** Circuit Court for Baltimore City

**Plaintiff:** Jasmine Carr (Pro Se)
**Defendant:** Notre Dame of Maryland University

**Case Type:** Civil – Employment / Employment Discrimination \ wrongful termination

**Cause of Action:**
- Disability Discrimination (ADA)
- Failure to Accommodate (ADA)
- Retaliation (ADA & Title VII)
- Pretextual / Wrongful Termination

**Relief Sought:**
- Compensatory damages
- Back pay and lost benefits
- Punitive damages (where permitted)
- Equitable and injunctive relief

**Jury Demand:** Yes

**Amount in Controversy:** More than $30,000

**Related Cases:** None

**ADR:** Not requested at this time

I certify that the information provided above is accurate to the best of my knowledge.

_____
Jasmine Carr / Pro Se
Date: 10/11/2025